## BEEKMAN'S PETITION.

*Supreme Court, First District; Special Term, June,* 1865.

FRAUD AND LEGAL IRREGULARITY IN ASSESSMENTS.—VACATING.
—POWER CONFERRED ON THREE OR MORE PERSONS.

An assessment for the *estimated* expenses of a local improvement in the city of New York, made *before* the work is done, by assessors appointed by the corporation under section 270 of the act of 1813, which contemplates an assessment of the *actual* expenses after the work is done, is not legal, and will be set aside on an application under the act of 1858.

Where a power, authority, or duty is confided by law to three or more persons

(not a court), they must all confer, unless otherwise specially authorized ; and if, after entering upon proceedings, one of them resigns his appointment, the others cannot, upon a subsequent meeting, proceed with the exercise of the powers conferred.

This rule applies to assessors in street cases in the city of New York.

Petition to vacate an assessment.

James W. Beekman, the owner of one hundred and five lots, assessed for regulating and grading First Avenue from 37th to 91st streets, petitioned to have such assessment vacated under the act of April 17, 1858, upon the ground of various frauds and irregularities.

*Henry H. Anderson,* for the petitioner, urged the grounds of objection, among which were the following :

II. The corporation cannot lay an assessment or cause one to be laid, before the work assessed for was actually done, as it can be shown that the portion of the statute of 1813 authorizing a previous assessment has been repealed by subsequent legislation. But it is unnecessary in this proceeding to determine that question, for, if the power exists, it is necessary for certain things to be done, which have not been done ; and certain things which have been done, should have been left undone, viz. :

By section 175 of the act of 1813 (*Davies' Laws,* 526), power is given to the corporation to make improvements, and to cause estimates of the expense of conforming to such regulations to be made, and a just and equitable assessment of such estimated expense to be made among the owners, &c., of lots. It is further provided that the mayor, aldermen, and commonalty shall appoint three skilful and competent persons to make every such estimate and assessment.

By section 270, the mayor, aldermen, and commonalty are authorized in all cases, where they may deem it necessary for the more speedy execution of the work, to have it done at their own expense on account of the persons respectively upon whom the same may be assessed, &c., and to levy and collect such amount, &c.

By the act of February 6, 1824 (*Davies' Laws,* 659), it is

provided that assessments for all such expenses may be made as directed in section 175 of the act of 1813.

It will be seen by reference to the ordinance under which the work in question was undertaken, that the mayor, aldermen, and commonalty deemed this work one which should be done at their own expense. As this brought the case under section 270 of the act of 1813, they did not appoint any persons to estimate such expense, nor to apportion such estimated expenses; but appointed assessors to assess the expense, when the same should actually be incurred. In this case they have acted prematurely. Their action is "*ultra vires.*" An assessment for any thing but the expense of performing the work has no authority of law, and such expense cannot be actually incurred till the work is done.

The amount stated in the assessment list is only an estimated amount, and there is no authority of law for laying any assessment for any amount estimated by any persons except such as are appointed by the mayor, aldermen, and commonalty for that purpose ; and no persons have been so appointed.

On the contrary, in this case, the mayor, aldermen, and commonalty did, by the very ordinance ordering the work, elect to have the same done at their own expense, and to have such expense only (*i. e.*, the actual expense) assessed upon the owners.

This not having been done, the assessment is premature and irregular, and should be vacated.

III. But even were the assessment authorized by law, it has not been lawfully made.

It appears that an assessment-list was made out and signed October 10, 1863, by Messrs. McNeill, Oakley, and Dooley, the assessors appointed by the ordinance. This assessment-list was, in December, sent to the Board of Revision and Correction of Assessments. On the 13th day of December, 1863, while that list was before the Board of Revision, McNeill, one of the assessors, resigned, and entered upon his duties as member of Assembly.

On the 13th of January, 1864, the Board of Revision and Correction sent the assessment-list back to the two assessors remaining in office—viz., Oakley and Dooley, who under a mistaken view of the law, proceeded to add to such assessment

certain amounts, and to increase the assessment upon the lots, including those of petitioner.

This was an irregularity, and vitiated the assessment, for it is now perfectly well settled that where any three persons (not a court) are appointed to act judicially upon a public matter, they must all confer; and this rule is rigidly enforced in all cases tending to divest a man of title to his property. (Doughty *a.* Hope, 1 *Comst.*, 82; *Exp.* Rogers, 7 *Cow.*, 526; The People *a.* Walker, 23 *Barb.*, 304; Lee *a.* Parry, 4 *Denio,* 125; Sharp *a.* Johnson, 4 *Hill*, 99; The King *a.* Forrest, 3 *D. & E.*, 38; The King *a.* Inhabitants of Hamstall Ridware, *Ib.*, 380; Powell *a.* Tuttle, 3 *Comst.*, 396.\*)

IV. But the amounts for which the assessment was laid are not correct amounts. They are untrue, and were known to the assessors to be so—*e. g. :*

1. The amount for advertising, $500, is shown by Allen's testimony to be incorrect. It is more than double the true amount.

2. The surveyor's fees were certified to by the street commissioner at $3,001.14. The assessors put in as his fees $6,683.97.

3. There is inserted in the assessment-list the sum of $3,457.05 as expense of assessing.

It is shown that the assessors have a salary each of $2,000 per annum (in all $6,000); and the salary of the clerk is $1,000, making $7,000 as the expense to the city per annum for assessing all assessments ordered by law.

That before this assessment was laid, there had already been assessed during the same year for assessing upwards of $10,000, so that this work actually cost nothing for assessing.

These are merely examples of the wrongs done in this assessment, and they come under both heads of frauds and irregularities.

IV. The manner of making the increase was fraudulent and irregular.

The law provides that the expense shall be assessed upon the owners, &c., in proportion to the amount their lots are benefited. It is shown that the increase was distributed, " not at all with reference to the location of property," " but only"

---

\* See also 2 *Rev. Stat.*, 555, § 27.

with reference to finding blank spaces on the list to insert amounts "put upon all lots where the former assessments were even dollars, and space left for insertion of figures."

A more clear case of irregularity cannot well be discovered.

*W. C. Trull,* for the corporation.

SUTHERLAND, J.—After a very careful examination of this case, I have come to the conclusion, that the application must be granted on grounds sufficiently indicated in the 2d, 3d, 4th, and 5th points of the petitioner's counsel.

I have some doubt about the 3d point, in consequence of the special phraseology of section 16 of the act of 1859; but upon the whole, I think it well taken